# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| **THE HOMEBINGO NETWORK, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **PUBLISH** |
| | ) | |
| **v.** | ) | **CIVIL ACTION 05-0701-WS-B** |
| | ) | |
| **GENE CHAYEVSKY,** *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

## ORDER

This matter is before the Court on the Motion to Dismiss (doc. 21) filed by defendants Mike Macke, Tim Minard and Gene Chayevsky (collectively, "Movants"). The Motion has been briefed and is ripe for disposition.[1]

### I.    Background.

On December 5, 2005, plaintiff, The HomeBingo Network, Inc. ("HomeBingo"), filed a Complaint for Patent Infringement (doc. 1) in this District Court, naming a dozen defendants.[2] For purposes of the pending Motions, the critical defendants are Cadillac Jack, Inc. ("Cadillac Jack"), a Georgia corporation with its principal place of business in Duluth, Georgia; Michael M. Macke ("Macke"), who is Cadillac Jack's President and Chief Executive Officer; Timothy J. Minard ("Minard"), who is Cadillac Jack's Chief Financial Officer and Assistant Secretary; and

---

[1]     Also before the Court are plaintiff's Third Affidavit of Alan Frank (doc. 54) and the Affidavit of Arthur A. Gardner (doc. 55). Both affidavits were filed well after briefing had concluded on the Motion to Dismiss. Accordingly, the undersigned must determine whether to consider such late-filed affidavits and, if so, whether Movants' objections to the now-stricken prior iterations of the Frank affidavit diminish or defeat its evidentiary value.

[2]     The ranks of defendants originally included four individuals (Oleg Boiko, Boris Belotserkovsky, Serguei Kouzmine, and Sergei Sokol) who were never served and never appeared herein. (*See* doc. 52.) The Complaint has been dismissed without prejudice as to those defendants pursuant to Rule 4(m), Fed.R.Civ.P. (*See* doc. 60.) There were also other defendants (Greenetrack, Inc. and Macon County Greyhound Park, Inc.) as to whom HomeBingo's claims have been dismissed without prejudice at the parties' joint request. (*See* doc. 29.)

Gene Chayevsky ("Chayevsky"), a member of Cadillac Jack's Board of Directors.  Although Macke, Minard and Chayevsky maintain that personal jurisdiction and venue are lacking as to them, there has been no request by any party that these proceedings should be dismissed as to Cadillac Jack for want of *in personam* jurisdiction or for improper venue.

According to the well-pleaded allegations of the Complaint, HomeBingo is the holder of United States Patent No. 6,186,892 ("the '892 Patent") for a method of playing bingo on an interactive communication network relying on probabilities for winning.  (Complaint, ¶¶ 19, 20.)  Defendant Cadillac Jack is alleged to be acting unlawfully "in this judicial district and elsewhere, by importing, operating, and/or using electronic bingo-based slot machines" whose method of playing bingo infringes the '892 Patent.  (*Id.*, ¶¶ 26-27, 30.)[3]  As for defendants Macke and Minard, the Complaint alleges that they: (a) are using and operating infringing bingo-based slot machines in this judicial district and elsewhere; (b) are inducing the use of infringing bingo-based slot machines in this judicial district and elsewhere; and (c) are assisting, aiding and abetting others to use and operate infringing bingo-based slot machines in this judicial district and elsewhere.  (*Id.*, ¶¶ 31-33.)  Defendant Chayevsky is likewise alleged to be inducing use and operation of infringing bingo-based slot machines in Atmore, Alabama, and elsewhere, and to be assisting, aiding and abetting others to use such machines at those locations.  (*Id.*, ¶¶ 35-36.)  Macke, Minard, and Chayevsky are all alleged to be sharing in the revenue stream generated by those infringing bingo-based slot machines in Atmore.  (*Id.*, ¶ 39.)[4]

---

[3]      The Complaint and other court filings suggest that the specific location of the alleged infringement in this judicial district is a casino in Atmore, Alabama, where these bingo-based slot machines have been installed and are operated.  As the Court understands plaintiff's allegations, Cadillac Jack does not own the casino; rather, it provides bingo-based slot machines to the casino and shares in the revenue they generate.

[4]      In briefing the Motion to Dismiss, the parties allude to a more complex history of dealings than the bald allegations of infringement might suggest.  Indeed, the story behind this lawsuit appears to be that HomeBingo licensed its electronic bingo methodology patent to Cadillac Jack in 2003, in exchange for 3% of Cadillac Jack's earnings from bingo-based slot machines.  When Cadillac Jack fell in arrears on such license fees, it is alleged, HomeBingo terminated the license.  Apparently, Cadillac Jack continued to operate and profit from bingo-based slot machines after termination of the license agreement, contending that the methodology was subject to a "prior art" that invalidated the '892 Patent.  These occurrences triggered a chain

-2-

Movants now ask the Court to dismiss the Complaint against them for want of personal jurisdiction, pursuant to Rule 12(b)(2), Fed.R.Civ.P., and for improper venue, pursuant to Rule 12(b)(3), Fed.R.Civ.P. Each of these grounds for relief will be assessed independently.

## II.     Status of Plaintiff's Late-Filed Affidavits.

Before turning to the merits of the Motion to Dismiss, the Court must assess whether and, if so, to what extent it will consider the two affidavits proffered by plaintiff in support of its position that personal jurisdiction and venue are proper here.

### A.     Timeliness.

Contemporaneously with its brief in opposition to the Motion to Dismiss, HomeBingo submitted the Affidavit of Alan Frank (doc. 25), who is HomeBingo's General Manager. Movants sought to strike the Frank Affidavit on grounds of lack of personal knowledge, hearsay, legal conclusions, and conclusory/self-serving statements. Before any ruling on the motion to strike, plaintiff countered by proffering a Supplemental Affidavit of Alan Frank (doc. 38), purporting to remedy the alleged deficiencies. This Supplemental Affidavit was submitted without leave of Court and after briefing had closed on the Motion to Dismiss. Movants again balked, filing a second motion to strike as to the Supplemental Affidavit, on grounds of lack of personal knowledge, opinions and legal conclusions, and settlement discussions. In lieu of filing a responsive brief to that motion to strike, HomeBingo consented to both the Frank Affidavit and Supplemental Affidavit being stricken, and submitted a third iteration of the Frank Affidavit (doc. 54), plus the Affidavit of Arthur A. Gardner (doc. 55). Both the Third Frank Affidavit and the Gardner Affidavit were filed without leave of Court on April 6, 2006, nearly six weeks after the Motion to Dismiss had been taken under submission on February 24, 2006.[5]

_____

reaction of events drawing these parties and this dispute inexorably into federal court.

[5]     In the interest of short-circuiting the apparent inevitability of a third motion to strike directed at the Third Frank Affidavit and the Gardner Affidavit, and avoiding the delays and redundant, cumulative briefing that would have ensued, the undersigned entered an Order (doc. 57) on April 7, 2006. That Order explained that the Court will consider the objections to the first two Frank Affidavits to apply with equal force to their successor, without the necessity of Movants reiterating those objections via a third motion to strike. Movants were not proscribed from submitting new objections to those most recent affidavits that could not have been raised previously; however, they opted not to do so.

A threshold question is whether, given their dilatory submission, the Third Frank Affidavit and the Gardner Affidavit should even be weighed in connection with the pending Motion to Dismiss.  Ordinarily, a non-movant is expected to submit appropriate evidentiary materials simultaneously with its opposition brief.  In all but exceptional cases, affidavits and other evidentiary materials must be filed before briefing on the underlying motion is completed.  To hold otherwise would be to encourage dilatory filings by conferring a tactical advantage on a litigant who waited to file his affidavits until after a motion had been taken under submission, thereby depriving his opponent of an opportunity to respond in writing to those affidavits.  Alternatively, to allow such evidentiary ping-pong would be tantamount to holding open the briefing on a pending motion indefinitely, as each side submitted volley after volley of evidentiary matter, and supplemental brief after supplemental brief,  months after the underlying motion was filed.  Both of these piecemeal litigation scenarios would be antithetical to virtues of consistent, efficient, fair administration of justice, and would disserve judicial economy.[6]

HomeBingo has not suggested that the Third Frank Affidavit and the Gardner Affidavit contain previously unavailable evidence that it could not reasonably have presented at the time of its February 17 memorandum in opposition to the Motion to Dismiss.  Indeed, as Frank is an executive of plaintiff, presumably HomeBingo has had unfettered access to him and the information in his possession throughout these proceedings.  Nor does HomeBingo allude to any extraordinary circumstances that might justify consideration of affidavits filed six weeks too late.  Nonetheless, in its discretion, the Court will not *sua sponte* strike the Third Frank Affidavit and the Gardner Affidavit as untimely.  Four reasons animate this result.  First,  this action was not assigned to the undersigned when the earlier Frank Affidavits were filed.  Even though the Supplemental Frank Affidavit was filed nearly three weeks after the close of briefing on the Motion to Dismiss, the District Judge to whom the case was assigned at that time did not suggest that it might be struck down on timeliness grounds.  The Court cannot discount the possibility that HomeBingo may have relied on this silence in withdrawing its previous Frank Affidavits

---

[6]     *See generally Platten v. HG Bermuda Exempted Ltd.*, 437 F.3d 118, 133-34 (1st Cir. 2006) (district court had no obligation to allow plaintiffs to make piecemeal corrections to pleadings by submitting supplemental affidavits concerning personal jurisdiction, based on facts that were in existence when the original opposition was filed).

and offering the third version.  Second, the Third Frank Affidavit bears considerable overlap with its two predecessors.  As a result of this similarity, the risk of inefficiencies caused by an ever-shifting evidentiary landscape is attenuated, and the likelihood of unfair surprise or prejudice to Movants is low.  Third, although Movants objected vehemently to the Supplemental Frank Affidavit, they never asserted that it was untimely.  Because Movants did not complain about timeliness with respect to a second affidavit filed three weeks after the underlying motion was taken under submission, there is no reason to believe they would do otherwise as to a third affidavit filed an additional three weeks later.  Fourth, Movants never submitted any supplemental objections (concerning timeliness or anything else) in response to the latest round of plaintiff's affidavits.

For these reasons, in its discretion, the Court will not strike the Third Frank Affidavit or the Gardner Affidavit as untimely, but will consider them on the merits.

### B.     Evidentiary Considerations.

Based on Movants' objections to the predecessors of the pending affidavits, the Court understands there to be four categories of evidentiary objections to the Third Frank Affidavit and the Gardner Affidavit: lack of personal knowledge, inclusion of conclusory statements, inclusion of statements of opinion or speculation, and recitation of settlement discussions.  *See generally CMS Industries, Inc. v. L.P.S. Int'l, Ltd.*, 643 F.2d 289, 295 (5th Cir. 1981) ("the district court may, on its own motion and without abuse of discretion, properly refuse to credit an affidavit clearly defective on its face").

An affidavit may only be considered to the extent that it is based on personal knowledge.  *See generally* Rule 602, Fed.R.Evid. (witnesses may not testify to matters as to which they lack personal knowledge).  However, when an affiant avers that his statements are based on personal knowledge, a district court is "bound to accept [such] statements as true, unless the context demonstrate[s] otherwise."  *Martin v. Rumsfeld*, 2005 WL 1526465, *2 (11th Cir. June 29, 2005); *Davis v. Valley Hospitality Services, LLC*, 372 F. Supp.2d 641, 653 (M.D. Ga. 2005) (explaining that a clear statement that an affidavit is based on personal knowledge is sufficient to satisfy the "personal knowledge" requirement); *Lindsey v. Burlington Northern Santa Fe Railway Co.*, 266 F. Supp.2d 1338, 1343 (N.D. Ala. 2003) (denying motion to strike because, among other reasons, affiant stated that she had personal knowledge as to subject of averments).  In its

introductory paragraph, the Third Frank Affidavit states that "[a]ffiant has personal knowledge that the following statements are true and correct." (Third Frank Aff. (doc. 54), at 1.) It elaborates that "[a]ffiant's knowledge is based upon information received directly from the defendants and from what he has personally seen and heard." (*Id.*) In the absence of circumstances establishing a lack of personal knowledge, this type of explicit averment is sufficient to satisfy the personal knowledge requirement.[7] Likewise, the personal knowledge requirement is plainly satisfied as to the Gardner Affidavit, wherein the affiant describes a meeting that he personally attended.

Another black-letter requirement of affidavits is that they must be rooted in facts, rather than conclusory remarks. *See, e.g., Burger King Corp. v. Lumbermens Mut. Cas. Co.*, 410 F. Supp.2d 1249, 1255 (S.D. Fla. 2005) ("An affidavit has no probative value and must be stricken when it contains conclusions rather than statements of fact."); *Pashoian v. GTE Directories*, 208 F. Supp.2d 1293, 1297 (M.D. Fla. 2002) ("an affidavit must be stricken when it is a conclusory argument, rather than a statement of fact"). The Third Frank Affidavit includes several conclusory legal opinions that are not properly considered, including the following: (a) a statement that Macke was the "alter ego" of Cadillac Jack (Third Frank Aff., ¶ 9); (b) a statement that Movants' actions "infringed U.S. Patent No. 6,186,892" (*Id.*, ¶ 11); and (c) a statement that Movants enjoyed "regular and established places of business in the Atmore casino" (*Id.*, ¶ 18). These aspects of the Third Frank Affidavit are **stricken** because they state unvarnished legal conclusions and are therefore improper. The Court perceives no such legal conclusions afflicting the Gardner Affidavit.

---

[7]     To be sure, certain passages of the Third Frank Affidavit might reasonably provoke skepticism as to whether they were in fact predicated on personal knowledge. For example, it is unclear how Frank would know that Chayevsky and Minard use computers and telephones to track the performance of their network of bingo-based slot machines in this judicial district (Affidavit, ¶ 6) or that Macke "has transmitted many email messages into the Southern District of Alabama ... with the specific intent of infringing [HomeBingo's] patent." (*Id.*, ¶ 13.) Nonetheless, the Court cannot weigh credibility at this stage of the proceedings, but must instead accept plaintiff's affidavits at face value. As Frank has sworn that he has personal knowledge, and has not contradicted such an allegation with "information and belief" or similar equivocation or back pedaling, this Court cannot and will not second-guess the veracity of that averment at this juncture.

A third category of objections that Movants articulated as to earlier versions of the Frank Affidavit was that it contained statements of mere speculation. Several of the contested statements remain in play in the Third Frank Affidavit. In particular, Movants urge the Court to strike as conjectural the following: (a) statements concerning decision-making processes at Cadillac Jack, such as a statement that certain information "enabled them to make informed decisions" for their bingo machines (Third Frank Aff., ¶ 7) and a statement that Macke "made all of [Cadillac Jack's] major decisions" (*Id.*, ¶ 9); and (b) a statement that Movants harbored an intent to infringe the '892 Patent, to induce others to infringe the patent, and contribute to others' acts of infringement (*Id.*, ¶ 13.) But these statements are not necessarily conjectural or speculative. Frank has averred that he possesses personal knowledge of the content of his Third Affidavit. The Court will not lightly look behind those averments and weigh their credibility. It is certainly not far-fetched to think that Frank could have first-hand, non-speculative knowledge of decision-making processes at Cadillac Jack, particularly given his alleged close personal relationship with its President and CEO. Moreover, Frank could legitimately possess personal knowledge of Movants' intent from various sources, including Movants' own admissions to him. The Court declines the invitation to weigh the credibility of the Third Frank Affidavit as to whether he really had personal knowledge of these items, but instead will accept his averment that he did so.[8]

Fourth and finally, Movants have previously objected that certain allegations in earlier iterations of the Frank Affidavit run afoul of Rule 408, Fed.R.Evid., which generally provides that evidence of conduct or statements made in compromise negotiations is not admissible. Review of the Third Frank Affidavit does not reveal any obvious Rule 408 issues. Likewise, the Gardner Affidavit concerns events at a meeting "which was billed as an opportunity for the parties to negotiate a re-structured license agreement." (Gardner Aff., ¶ 3.) On the facts before this Court, this business meeting would not appear to implicate Rule 408, inasmuch as it did not consist of compromise negotiations concerning disputed legal claims. Accordingly, the Court

---

[8]     If discovery reveals that, contrary to his averments, Frank actually lacked personal knowledge of these statements of fact, the Court is confident that defendants will utilize that discrepancy to maximum tactical advantage in these proceedings.

will not strike any portion of the Third Frank Affidavit or the Gardner Affidavit as violative of Rule 408.

When an affidavit "contains inadmissible evidence, the court may strike the inadmissible portions of the affidavit and consider the rest." *Story v. Sunshine Foliage World, Inc.*, 120 F. Supp.2d 1027, 1031 (M.D. Fla. 2000). This is precisely the proper result here. Accordingly, the above-identified portions of the Third Frank Affidavit that state legal conclusions are **stricken**, but all remaining averments of that filing, as well as the Gardner Affidavit, will be considered in their entirety for purposes of the instant Motion to Dismiss.

## III.    Analysis.

### A.    *Personal Jurisdiction Issue.*

Movants first maintain that this District Court lacks personal jurisdiction over them, inasmuch as defendants Macke and Minard are residents of Georgia and defendant Chayevsky is a resident of New York. According to Movants, they have insufficient contacts with Alabama for the exercise of personal jurisdiction over them to pass constitutional muster.[9]

#### 1.    *Legal Standard.*

Where a district court in its discretion decides a personal jurisdiction issue without an

_____

[9]    Jurisdictional discovery is common in the Rule 12(b)(2) context to assist the parties and the Court in pinning down facts relating to personal jurisdiction. *See, e.g., Trintec Industries, Inc. v. Pedre Promotional Products, Inc.*, 395 F.3d 1275, 1283 (Fed. Cir. 2005) (explaining that plaintiff may be entitled to jurisdictional discovery when evidence is sparse and there are gaps sufficient to warrant additional evidence before decision on jurisdiction is made); *Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1214 n.7 (11th Cir. 1999) (recognizing qualified right to conduct jurisdictional discovery); *In re Nazi Era Cases Against German Defendants Litigation*, 320 F. Supp.2d 204, 214 (D.N.J. 2004) (where defendant asserted defense of lack of personal jurisdiction, recognizing plaintiffs' right to jurisdictional discovery if it appears that facts may exist to support exercise of personal jurisdiction); *Arista Records, Inc. v. Sakfield Holding Co. S.L.*, 314 F. Supp.2d 27, 29 (D.D.C. 2004) (explaining that "[a] plaintiff faced with a motion to dismiss for lack of personal jurisdiction is entitled to reasonable discovery, lest the defendant defeat the jurisdiction of a federal court by withholding information on its contacts with the forum") (citation omitted). Here, however, no party has requested jurisdictional discovery. All parties are apparently content to submit the Rule 12(b)(2) issue to the Court on the strength of the Complaint and their dueling affidavits, with no discovery to firm up the factual foundation; therefore, the Court will consider the Motion as filed, foregoing supplementation of the record via jurisdictional discovery.

evidentiary hearing, it is the plaintiff's burden to establish a *prima facie* case of personal jurisdiction over a nonresident defendant. *See Electronics for Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1349 (Fed. Cir. 2003); *Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1269 (11th Cir. 2002).[10]  In considering the adequacy of a plaintiff's proffer, the Court is constrained to accept uncontroverted allegations in the Complaint as true and to resolve factual disputes in the plaintiff's favor, such that any factual conflict in the parties' respective affidavits and other written materials must be construed in the light most favorable to the plaintiff. *See Electronics for Imaging*, 340 F.3d at 1349; *Deprenyl Animal Health, Inc. v. University of Toronto Innovations Foundation*, 297 F.3d 1343, 1347 (Fed. Cir. 2002); *Akro Corp. v. Luker*, 45 F.3d 1541, 1543 (Fed. Cir. 1995) (plaintiff's factual allegations that are not directly controverted are taken as true for purposes of determining personal jurisdiction).

There are two types of personal jurisdiction: general and specific.  General personal jurisdiction arises "when a defendant maintains continuous and systematic contacts with the forum state even when the cause of action has no relation to those contacts." *Trintec Industries, Inc. v. Pedre Promotional Products, Inc.*, 395 F.3d 1275, 1279 (Fed. Cir. 2005) (citations omitted); *Silent Drive, Inc. v. Strong Industries, Inc.*, 326 F.3d 1194, 1200 (Fed. Cir. 2003). There is no allegation here that any of Macke, Minard, or Chayevsky have such continuous and systematic contacts with the state of Alabama that general jurisdiction might properly be invoked.  Therefore, the personal jurisdictional issue stands or falls on a specific jurisdiction analysis.  Specific jurisdiction is proper, even if a defendant's contacts with the forum state are

---

[10]     Pursuant to 28 U.S.C. § 1295(a)(1), any appeal in this action would likely be subject to the exclusive jurisdiction of the U.S. Court of Appeals for the Federal Circuit.  That tribunal has declared that Federal Circuit law, and not that of the regional circuit wherein the dispute arose, applies to review of "whether the district court properly declined to exercise personal jurisdiction over an out-of-state accused infringer." *Akro Corp. v. Luker*, 45 F.3d 1541, 1543 (Fed.Cir. 1995); *see also Rates Technology Inc. v. Nortel Networks Corp.*, 399 F.3d 1302, 1307 (Fed. Cir. 2005) ("We apply our own law, not that of the regional circuit, to issues of personal jurisdiction in a patent infringement case."); *Electronics for Imaging*, 340 F.3d at 1348 (finding that district court erred in applying regional circuit law on personal jurisdiction to patent claim); *but see Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 626 (11th Cir. 1996) (applying Eleventh Circuit law to appeal of district court's dismissal of complaint for lack of personal jurisdiction in patent infringement case).  Therefore, the Court will apply Federal Circuit law to Movants' request for relief under Rule 12(b)(2).

"isolated and sporadic," so long as such activities arise out of or relate to the cause of action. *See Trintec*, 395 F.3d at 1279; *Silent Drive*, 326 F.3d at 1200.

When a defendant challenges specific personal jurisdiction in a federal question case, the plaintiff has the twin burdens of establishing that personal jurisdiction over the defendant comports with the forum state's long-arm provision, as well as the strictures of the due-process clause of the Fifth Amendment to the United States Constitution. *See Trintec*, 395 F.3d at 1279; *Silent Drive*, 326 F.3d at 1200-01; *Deprenyl*, 297 F.3d at 1349-50. In Alabama, this two-pronged inquiry collapses into a single question because Alabama's long-arm provision permits its courts to exercise personal jurisdiction to the full extent permitted by the Due Process Clause. *See Ruiz de Molina v. Merritt & Furman Ins. Agency, Inc.*, 207 F.3d 1351, 1356 (11th Cir. 2000); *Lasalle Bank N.A. v. Mobile Hotel Properties, LLC*, 274 F. Supp.2d 1293, 1296 (S.D. Ala. 2003). Where, as here, the reach of the state long-arm statute is coextensive with the limits of due process, "these two inquiries coalesce into one." *Trintec*, 395 F.3d at 1279. Accordingly, the critical question here is whether the exercise of specific personal jurisdiction over Macke, Minard and Chayevsky may be reconciled with constitutional due process safeguards.

Due process authorizes the exercise of personal jurisdiction when both (1) the nonresident defendant has purposefully established minimum contacts with the forum state; and (2) the exercise of jurisdiction will not offend traditional notions of fair play and substantial justice. *See Deprenyl*, 297 F.3d at 1350-51. In a patent case, the Federal Circuit subsumes both elements for determining whether the exercise of personal jurisdiction comports with due process into the following three-pronged test: "(1) whether the defendant 'purposefully directed' its activities at residents of the forum; (2) whether the claim 'arises out of or relates to' the defendant's activities with the forum; and (3) whether assertion of personal jurisdiction is 'reasonable and fair.'" *Silent Drive*, 326 F.3d at 1201-02 (quoting *Inamed Corp. v. Kuzmak*, 249 F.3d 1356, 1360 (Fed. Cir. 2001)); *see also Electronics for Imaging*, 340 F.3d at 1350 (similar).[11] Once a plaintiff has shown sufficient minimum contacts to satisfy the first two factors, "it

---

[11]     As the *Silent Drive* panel explained, "the first two factors correspond with the 'minimum contacts' prong of the *International Shoe* analysis, and the third factor corresponds with the 'fair play and substantial justice' prong of the analysis." *Silent Drive*, 326 F.3d at 1202 (citation omitted).

becomes defendants' burden to present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Electronics for Imaging*, 340 F.3d at 1351-52 (citation omitted). This reasonableness inquiry examines the burden on the defendant, the interests of the forum state, the plaintiff's interest in obtaining relief, the judicial system's interest in resolving the dispute efficiently, and the several states' shared interest in furthering fundamental substantive social policies. *See id.* at 1352. Where sufficient minimum contacts exist, it is a "rare" case in which the exercise of personal jurisdiction is rejected as unreasonable or unfair. *Id.*

> 2. *Application of Legal Standard to Movants' Circumstances.*

Movants' Rule 12(b)(2) arguments take aim at both the "minimum contacts" and the "fair play and substantial justice" elements of the jurisdictional inquiry.

> a. *Key Jurisdictional Facts.*

With regard to minimum contacts, Movants argue that they lack a sufficient nexus to the state of Alabama to support the exercise of personal jurisdiction over them. To that end, Movants submit Declarations stating as follows: (a) none of them live in Alabama, with Macke and Minard being Georgia residents, and Chayevsky being a New York resident (Macke Decl., ¶ 6; Minard Decl., ¶ 3; Chayevsky Decl., ¶ 3); (b) none of them own property in Alabama, pay taxes in Alabama, or are registered to vote in Alabama (Macke Decl., ¶¶ 7-8; Minard Decl., ¶¶ 4-5; Chayevsky Decl., ¶¶ 3-4); (c) they do not "transact or solicit any personal business within the state" (Macke Decl., ¶ 8; Minard Decl., ¶ 5; Chayevsky Decl., ¶ 5); (d) they "do not personally derive any revenue from goods used or consumed or services rendered in Alabama" (Macke Decl., ¶ 8; Minard Decl., ¶ 5; Chayevsky Decl., ¶ 5); (e) none of the business dealings of Cadillac Jack with HomeBingo took place in Alabama or were directed to any person or location in Alabama (Macke Decl., ¶ 11); (f) defendant Macke has been to Alabama "approximately ten times during the last five years" to conduct Cadillac Jack business, but never to do business with HomeBingo (Macke Decl., ¶ 12); (g) defendant Minard has traveled to Alabama "approximately four or five times" to conduct Cadillac Jack business, but never to do business with HomeBingo

(Minard Decl., ¶ 8);[12] and (h) defendant Chayevsky has been to Alabama only one time, has never conducted any business with HomeBingo, and has never conducted business anywhere relating to the '892 Patent (Chayevsky Decl., ¶¶ 8-9).

However, the jurisdictional facts pertaining to Macke, Minard and Chayevsky are not confined to the contents of their declarations. Rather, as stated *supra*, defendants' declarations may be accepted on Rule 12(b)(2) scrutiny only to the extent that they do not conflict with plaintiff's affidavits. Moreover, all averments in plaintiff's affidavits and all uncontroverted factual allegations in the Complaint are also considered in the personal jurisdiction analysis. Under this evidentiary standard, the relevant jurisdictional facts are follows: (i) Macke, Minard and Chayevsky, among others, own, operate and maintain a network of electronically linked, bingo-based slot machines, including machines in the Southern District of Alabama (Third Frank Aff., ¶ 4); (ii) some 30% of the machines provided by Movants and Cadillac Jack (with whom Movants are associated) operate in Alabama casinos (Complaint, ¶ 16); (iii) all of defendants' machines in Alabama are alleged by plaintiff to utilize a method of playing bingo that infringes its '892 Patent (Complaint, ¶ 17); (iv) Movants regularly monitor the bingo-based slot machine network's performance, including those portions of the network located in Alabama, via computers, telephones and other communication tools (Third Frank Aff., ¶¶ 6-7); (v) Macke and Minard have business relationships with at least one casino in the Southern District of Alabama (Third Frank Aff., ¶ 5); (vi) Macke has had numerous telephone and electronic mail communications with persons in Alabama relating to installation, sale and service of bingo-based slot machines alleged to infringe the '892 Patent (Third Frank Aff., ¶ 13); (vii) Macke, Minard and Chayevsky all supervise the bingo-based slot machine network, including those machines located in Atmore, Alabama (Third Frank Aff., ¶¶ 16-17); (viii) Macke, Minard and Chayevsky, directly and through others, installed, operated and maintained allegedly infringing machines in

---

[12]     Minard explains that the purpose of his visits to Alabama has been "to meet with the Poarch Band of Creek Indians regarding contractual matters at the Riverside Casino outside of Montgomery." (Minard Decl., ¶ 8.) Minard does not deny that those "contractual matters" were related to the placement and operation at that casino, or the proposed placement and operation at that casino, of electronic bingo-based slot machines of the kind that are the subject of this patent infringement lawsuit. Given Cadillac Jack's line of business, it is improbable that those discussions did not relate to such devices.

Atmore, Alabama (Third Frank Aff., ¶ 18); and (ix) Macke and Minard have been to Alabama on five (Minard) to ten (Macke) occasions to conduct Cadillac Jack business, but Chayevesky has only been to Alabama once for unspecified reasons that may or may not have related to Cadillac Jack (Macke Decl., ¶ 12; Minard Decl., ¶ 8; Chayevsky Decl., ¶ 8).

<em>b.     Minimum Contacts Analysis.</em>

As explained *supra*, the threshold personal jurisdiction inquiry is whether Macke, Minard and Chayevsky possessed minimum contacts with the forum state.  That question has two subparts, to-wit: whether each defendant "purposefully directed" activities at Alabama residents, and whether the claim "arises out of or relates to" each defendant's contacts with Alabama.  *See, e.g., Silent Drive*, 326 F.3d at 1201-02; *Akro*, 45 F.3d at 1545 (minimum contacts analysis turns on whether defendant "purposefully directed his activities at residents of [Alabama] and, if so, whether the litigation results from alleged injuries that arise out of or relate to those activities").  This analysis does not hinge on the frequency and duration of Movants' physical presence in the state of Alabama.  *See Electronics for Imaging*, 340 F.3d at 1351 (electronic, postal and telephonic communications with forum state "are significant in the personal jurisdiction calculus even though [defendant] was not physically present in [the forum state] when he made these communications"); *Deprenyl*, 297 F.3d at 1351-52 (out-of-state defendant's patent license negotiation efforts by telephone and mail with a party inside forum state qualify as activities "purposefully directed" at forum state, notwithstanding lack of physical presence).  In evaluating whether minimum contacts exist, courts have "abandoned more formalistic tests that focused on a defendant's 'presence' within a State in favor of a more flexible inquiry."  *Inamed*, 249 F.3d at 1361 (citation omitted).

Upon viewing the record through the prism of the prevailing evidentiary standard, the Court finds that HomeBingo has demonstrated that Movants have sufficient contacts with Alabama to subject them to personal jurisdiction here.  Considered in the light most favorable to HomeBingo, the record reveals that Movants have purposefully directed activities at Alabama residents.  All three Movants have leadership positions within Cadillac Jack, a company with a network of allegedly infringing bingo-based slot machines, nearly a third of which are located in Alabama.  Macke has been to Alabama approximately ten times to conduct Cadillac Jack business, and has engaged in numerous electronic and wire communications with persons in

-13-

Alabama relating to allegedly infringing slot machines.  Minard has traveled to Alabama approximately five times to conduct Cadillac Jack business; has supervised Cadillac Jack's bingo-based slot machine network, including the portions of that network found in Alabama; has monitored the performance of the Alabama portion of the Cadillac Jack bingo-based slot machine network remotely via computer, telephone and other communication methods; and has been involved in installation, ownership, operation and maintenance of allegedly infringing bingo-based slot machines in Atmore, Alabama.  Finally, Chayevsky has traveled to Alabama one time; has participated in installing, owning, operating and maintaining the Cadillac Jack network of bingo-based slot machines in Alabama; directly supervises the network, including the portion located in Atmore, Alabama; and has utilized computers, telephones and other communication devices to monitor remotely the performance of the Alabama portion of the Cadillac Jack bingo-based slot machine network.  Such evidence suffices to show that Macke, Minard and Chayevesky purposefully directed activities at Alabama residents, and that those activities give rise to the instant litigation.  The minimum contacts test is satisfied.

Movants' arguments to the contrary are unavailing.  Movants rely heavily on affidavit statements that they live, vote and pay taxes in other states, and do not own real or personal property in Alabama.  Such evidence would undoubtedly be germane if the question presented was whether these individuals are domiciled in Alabama; however, it is largely irrelevant to whether they have minimum contacts with Alabama.[13]  Additionally, Movants insist that they conduct no "personal business" in Alabama, thereby attempting to distinguish between their own affairs (which they conduct in other states) and business they transact on Cadillac Jack's behalf (which includes activities directed at Alabama residents).  This argument is also well wide of the mark.  Movants offer no authority for application of the so-called "fiduciary shield" doctrine here, under which one is exempted from a state's personal jurisdiction if he purposefully directs

---

[13]     The dissimilarity between the "purposefully directed" prong and a "physical presence" test is well established.  In one of many decisions illustrating this point, the Federal Circuit deemed minimum contacts satisfied where a non-resident defendant telephonically threatened the plaintiff in the forum state with infringement, hired an attorney in the forum state to contact the plaintiff with reports on a patent application, contacted plaintiff telephonically at various times regarding the technology covered by the patent application, and visited plaintiff's facility to explain the technology.  *Electronics for Imaging*, 340 F.3d at 1351.

activities at the forum state on his employer's behalf, rather than for his own personal ends.  In the absence of binding precedent obliging it to do so, the Court declines to adopt that doctrine. *See Calder v. Jones*, 465 U.S. 783, 790, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984) (individual defendants' "status as employees does not somehow insulate them from jurisdiction" for their contacts with the forum state); *Kinetic Instruments, Inc. v. Lares*, 802 F. Supp. 976, 982 (S.D.N.Y. 1992) ("it is clear that the [individual defendant] will not be insulated from jurisdiction in New York simply because his contacts here were made in his capacity as an officer of the corporation").[14]  Equally flawed is Movants' contention that personal jurisdiction is lacking because they "have not participated in any business dealings with HomeBingo in the state or directed any communications with HomeBingo into the state."  (Movants' Brief, at 7.) Again, this is irrelevant.  The underlying business dealings between HomeBingo and Cadillac Jack are not at issue in this action.  Instead, HomeBingo's claims are that Movants (along with the other defendants) have directly infringed, have induced others to infringe, and have contributed to infringement of the '892 Patent.  If, as plaintiff has alleged in its Complaint and in the Third Frank Affidavit, Movants purposefully directed infringing activities at Alabama residents, then the minimum contacts threshold is satisfied, regardless of whether Movants had any direct dealings with HomeBingo in Alabama.[15]  This case arises not from business dealings

---

[14]    It is well established that an agent is not relieved of liability for tortious acts simply because he engages in such conduct on behalf of another.  *See, e.g., Restatement (Second) of Agency*, § 359C(1) ("Principal and agent can be joined in one action for a wrong resulting from tortious conduct of an agent ..., and a judgment can issue against each."); *Carter v. Franklin*, 173 So. 861, 863 (Ala. 1937) (explaining that "[t]he relation of employer and employee excuses neither" from the proximate results of their misconduct).  Given an agent's unquestionable liability for his own torts even if performed on a principal's behalf, it would be a peculiar result, indeed, if an agent's contacts with a forum state on a principal's behalf were deemed not to "count" against the agent for purposes of personal jurisdiction.

[15]    In their reply brief, Movants argue that this Court cannot exercise personal jurisdiction over them based solely on the activities of Cadillac Jack unless Cadillac Jack is their alter ego.  (*See* Reply Brief, at 5-7.)  This appears to be a correct statement of law.  *See Minnesota Mining & Mfg. Co. v. Eco Chem, Inc.*, 757 F.2d 1256 (Fed. Cir. 1985) (noting that if corporation is individual's alter ego, then "its contacts are his and due process is satisfied"); *Electronics for Imaging*, 340 F.3d at 1349 n.2 ("Because EFI alleges that Coyle does business as Kolbet Labs, all contacts made by Coyle are also attributable to Kolbet Labs.  It therefore is

-15-

between HomeBingo and defendants, but from alleged acts of patent infringement by defendants in Alabama and elsewhere.

"The requirement for purposeful minimum contacts helps ensure that non-residents have fair warning that a particular activity may subject them to litigation within the forum." *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1565 (Fed. Cir. 1994) (allegation that defendants purposefully shipped allegedly infringing fans into Virginia is sufficient to establish specific jurisdiction). On the record before it, the Court is convinced that the exercise of personal jurisdiction over Macke, Minard and Chayevsky is consistent with this constitutional objective. Viewing the evidence in the light most favorable to plaintiff, all three Movants purposefully directed activities at Alabama residents by negotiating, owning, installing, operating, supervising, monitoring and maintaining a network of bingo-based slot machines at casinos in Alabama. This lawsuit stems from those bingo-based slot machines, and plaintiff's allegation that they unlawfully infringe on a patent that it owns. Therefore, the Court readily finds that the first two elements of the Federal Circuit's personal jurisdiction test have been satisfied, to-wit: (1) that each Movant "purposefully directed" activities at residents of the forum; and (2) that the claim "arises out of or relates to" each Movant's activities with the forum.

c.     *Fair Play and Substantial Justice.*

The minimum contacts portion of the jurisdictional analysis having been satisfied, the burden shifts to Movants to present a compelling case that assertion of personal jurisdiction over them would be unreasonable and unfair. *See Electronics for Imaging*, 340 F.3d at 1351-52; *Silent Drive*, 326 F.3d at 1201-02. This analysis takes into account the following factors: (1) the burden on the defendant, (2) the interests of the forum state, (3) the plaintiff's interest in

---

unnecessary to conduct separate minimum contact analyses with respect to each defendant in this case."). It is, however, inapplicable to this case because personal jurisdiction over these defendants is not predicated solely on Cadillac Jack's activities. The exercise of personal jurisdiction over Macke, Minard and Chayevsky is based on their own conduct and activities, not those of Cadillac Jack. As noted *supra*, if Movants were purposefully directing their activities in Alabama, then it is utterly inconsequential for jurisdictional purposes whether they were doing so on their own account or for the benefit of their employer. The "alter ego" analysis is therefore unnecessary and unhelpful here, at least insofar as personal jurisdiction is concerned.

-16-

obtaining relief, (4) the judicial system's interest in resolving the dispute efficiently, and (5) the several states' shared interest in furthering fundamental substantive social policies.  *See Electronics for Imaging*, 340 F.3d at 1352.  As mentioned *supra*, rejection of personal jurisdiction on "reasonable and fair" grounds is "limited to the rare situation in which the plaintiff's interest and the state's interest in adjudicating the dispute in the forum are so attenuated that they are clearly outweighed by the burden of subjecting the defendant to litigation within the forum."  *Inamed*, 249 F.3d at 1363 (citation omitted).

　　　　In an effort to meet their burden, Macke, Minard and Chayevsky argue that interests of fair play and substantial justice would be offended by the exercise of personal jurisdiction over them because the burden on them is substantial, Alabama has no interest in adjudicating this action, and plaintiff's interest in convenient and effective relief is not served by litigating in this forum.  (Movants' Brief, at 8-9.)  The Court disagrees.  There is no indication in the record that Movants, who are represented by Alabama counsel, would be substantially inconvenienced by proceedings in Alabama, rather than in their home states of Georgia or New York.  *See Electronics for Imaging*, 340 F.3d at 1352 (opining that "it would not impose much of a geographic burden for Nevada defendants to litigate in California").  Moreover, Movants' insistence that Alabama has no interest in adjudicating a suit concerning alleged patent infringement on Alabama soil fails, as a matter of law.  *See Deprenyl*, 297 F.3d at 1356 (observing that a forum state "has a substantial interest in preventing patent infringement within its borders"); *see also Beverly Hills*, 21 F.3d at 1568 (similar).  It is simply incorrect for Movants to assert that Alabama has no connection with, and no interest in, this dispute when allegedly infringing activity is occurring here.  Finally, HomeBingo unquestionably has an interest in protecting itself from patent infringement, and in obtaining convenient and effective relief in a forum where the alleged infringement was and is taking place.  *See Electronics for Imaging*, 340 F.3d at 1352 (personal jurisdiction not inconsistent with reasonableness and fairness where plaintiff "has an undisputed interest in protecting itself from patent infringement").  Simply put, Movants have failed to persuade the Court that this is one of those rare cases in which exercise of personal jurisdiction would do violence to traditional notions of fair play and substantial justice.

　　　　Both the minimum contacts and the reasonableness/fairness prongs of the personal

jurisdiction analysis having been satisfied, the Court finds that the Motion to Dismiss for lack of personal jurisdiction, pursuant to Rule 12(b)(2), is due to be, and the same hereby is, **denied**.

> **B.**     *Venue Issue.*

As an alternate basis for seeking dismissal of the Complaint, Movants argue that venue is improper, thereby mandating dismissal pursuant to Rule 12(b)(3), Fed.R.Civ.P.

> *1.*     *Elements of Venue Under § 1400(b).*

There is a special statute addressing venue in patent infringement actions.  Under 28 U.S.C. § 1400(b), "[a]ny civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business."  *Id.*[16]  Section 1400(b) is the "sole and exclusive provision controlling venue in patent infringement[] actions" for non-corporate defendants.  *Schnell v. Peter Eckrich & Sons, Inc.*, 365 U.S. 260, 262-64, 81 S.Ct. 557, 5 L.Ed.2d 546 (1961); *see also Cytomedix, Inc. v. Bennett*, 299 B.R. 878 (N.D. Ill. 2003) (individual defendant in patent infringement case is subject to venue only in judicial districts where § 1400(b) is satisfied); *Dimensional Media Associates, Inc. v. Optical Products Development Corp.*, 42 F. Supp.2d 312, 316 (S.D.N.Y. 1999) ("venue in patent cases lies with respect to individual defendants only in the districts identified in § 1400(b)").  This section must not be given a broad construction in the interest of some overriding policy.  *See In re Cordis Corp.*, 769 F.2d 733, 736 (Fed. Cir. 1985) ("The provisions of § 1400(b) are not to be liberally construed.").

---

[16]     Although both are nominally subject to the same special venue statute, individual and corporate defendants in patent infringement cases face differing venue rules.  This is because, in the wake of a 1988 amendment to 28 U.S.C. § 1391(c) that extended venue against a corporate defendant to any district in which personal jurisdiction might be obtained over it, "[v]enue in a patent action against a corporate defendant exists wherever there is personal jurisdiction."  *Trintec*, 395 F.3d at 1280; *see also Hoover Group, Inc. v. Custom Metalcraft, Inc.*, 84 F.3d 1408, 1410 (Fed. Cir. 1996) ("for venue purposes the residence of corporate defendants in patent infringement actions is governed by 28 U.S.C. § 1391(c), as amended in 1988").  Thus, the "regular and established place of business" test for venue under § 1400(b) has continued vitality today only with respect to non-corporate defendants.  *See VE Holding Corp. v. Johnson Gas Appliance Co.*, 917 F.2d 1574, 1580 n.17 (Fed. Cir. 1990); *Meteoro Amusement Corp. v. Six Flags*, 267 F. Supp.2d 263, 267 & n.1 (N.D.N.Y. 2003); *Cydomedix*, 299 B.R. at 878.

A straightforward reading of the statute confirms that a plaintiff has two alternatives for laying venue in a patent infringement action.  In particular, a plaintiff may properly file its complaint in either: (1) a district where the defendant resides; or (2) a district where the defendant both has engaged in infringing activity and has a "regular and established place of business."  28 U.S.C. § 1400(b).  It is undisputed that Macke, Minard and Chayevsky do not reside in Alabama.  As such, the first option for venue under § 1400(b) is unavailable.  As for the second option, there is no dispute that HomeBingo is accusing Movants of having engaged in acts of patent infringement in the Southern District of Alabama.  *See generally* 35 U.S.C. § 271(a) (patent infringement occurs when one "without authority makes, uses, offers to sell, or sells any patented invention, within the United States ... during the term of the patent therfor").  Because the plain language of § 1400(b) reflects that the "acts of infringement" and "regular and established place of business" prongs are conjunctive prerequisites for a venue finding, the existence of alleged acts of infringement in this judicial district is not sufficient, in and of itself, to lay venue.  Rather, venue exists here only if, in addition to those acts of infringement, Movants have a "regular and established place of business" in this district.  That question is dispositive on the matter of venue.  *See Mickowski v. Visi-Trak Corp.*, 36 F. Supp.2d 171, 176-77 (S.D.N.Y. 1999) (dismissing claims against individual defendants for improper venue, where those defendants neither resided in judicial district nor maintained a place of business therein).

> 2.    The *"Regular and Established Place of Business" Requirement.*

Section 1400(b) does not define what is meant by the term "regular and established place of business," and case authorities have reached disparate conclusions as to its precise definition.  *See MAGICorp. v. Kinetic Presentations, Inc.*, 718 F. Supp. 334, 340 (D.N.J. 1989) ("courts and commentators alike are clear that there is no definitive formula for assessing whether the defendant has 'a regular and established place of business' in the district").  What is clear, however, is that the "regular and established place of business" requirement contemplates something more than minimum contacts or simply doing business in a particular district.  *See Kinetic Instruments*, 802 F. Supp. at 987 (having a regular and established place of business involves more than "doing business" in forum district); *MAGICorp.*, 718 F. Supp. at 340 ("This prong of the venue test, however, requires greater contacts than were necessary under the 'doing business' test formerly articulated in the generic venue statute."); *Johnston v. IVAC Corp.*, 681

F. Supp. 959, 962 (D. Mass. 1987) (regular and established place of business standard requires more than minimum contacts necessary for establishing personal jurisdiction).  Moreover, in assessing whether a defendant has a "regular and established place of business" in a district, "the appropriate inquiry is whether the corporate defendant does its business in that district through a permanent and continuous presence there." *Cordis*, 769 F.2d at 737.[17]

Unfortunately, the parties have not identified, and the Court's research has not disclosed, any authorities establishing an analytical framework for application of the "regular and established place of business" test to individual defendants.  To be sure, there are extant opinions stating in conclusory fashion that this condition is or is not satisfied as to an individual defendant in a particular case; however, the Court is unaware of any decisions setting forth a searching analysis as to exactly what is required for an individual defendant to be deemed to have a "regular and established place of business" in a judicial district.  Nonetheless, a number of the basic definitional concepts from the corporate context are appropriately engrafted onto the test for individuals.  As with corporate defendants, the § 1400(b) touchstone for individual defendants should be whether they conduct business in the district "through a permanent and continuous presence" and whether they are engaged in this district in carrying on in a continuous

---

[17]     Various lower courts have adopted standards in the corporate defendant context that are substantially similar to that set forth in *Cordis*.  *See, e.g., Kinetic Instruments*, 802 F. Supp. at 987 ("regular and established place of business" exists only if defendant is "regularly engaged in carrying on a substantial part of its ordinary business on a permanent basis in a physical location within the district over which it exercises some measure of control"); *Magee v. Essex-Tex Corp.*, 704 F. Supp. 543, 545 (D. Del. 1988) ("A regular and established place of business has been described as a place where a party is engaged in carrying on in a continuous manner a substantial part of its ordinary business.") (citation omitted); *Michod v. Walker Magnetics Group, Inc.*, 115 F.R.D. 345, 347 (N.D. Ill. 1987) (alleged infringer "has a regular and established place of business in a judicial district only if it actually has a place of business there; activities such as the maintenance of independent sales agents, visits by company representatives, and the solicitation of orders are not enough").  Thus, a corporate defendant has been deemed to satisfy the § 1400(b) elements where it has a business phone and letterheads in the district, and where it carries on activities connected with the business in the district.  *See Magee*, 704 F. Supp. at 545.  By contrast, venue has been found improper under § 1400(b) as to a corporate defendant that neither permitted direct sales nor maintained any inventory in the forum state, where its sales representatives in that district did not provide extensive technical support.  *See Johnston*, 681 F. Supp. at 964.

manner a substantial part of their ordinary business.

These questions are unambiguously answered in the negative. It is uncontested that Macke, Minard and Chayevsky do not live in this judicial district. They do not work in this judicial district. They do not have office space, office equipment, or land-based telephone lines in this judicial district. They do not employ support staff in this judicial district. One could not mail them a letter to any physical address in this judicial district. They may travel to this district on business from time to time, and may participate in business ventures in this district. However, such activities are too sporadic, circumscribed and attenuated to constitute the requisite "permanent and continuous presence" in this judicial district for them as individuals, much less to demonstrate that they carry on in a continuous manner a substantial part of their ordinary business here.[18]

As the Court understands it, HomeBingo's position is that the bingo-based slot machines at the casino in Atmore, Alabama constitute a regular and established place of business for Macke, Minard and Chayevsky. To be clear, there is no allegation that these defendants own the casino, work at the casino, have offices at the casino, or have ever even set foot in the casino. Instead, plaintiff's argument (while not clearly articulated) appears to follow this reasoning: (i) Macke, Minard and Chayevsky own, operate, and maintain Cadillac Jack's bingo-based slot machines; (ii) a number of those machines are located at the Atmore casino; and (iii) therefore, Movants have a regular and established place of business in the Southern District of Alabama.[19]

---

[18]    There is no tension between this reasoning and the Court's finding *supra* that all three Movants had sufficient minimum contacts with the state of Alabama to be subject to personal jurisdiction here. As noted, the "regular and established place of business" requirement for venue purposes is distinct from, and decidedly more onerous than, the minimum contacts requirement for personal jurisdiction.

[19]    The first two propositions are drawn from the Third Frank Affidavit, and are therefore accepted as true for purposes of this Rule 12(b) inquiry. The Court does so despite the apparent inconsistency between the Third Frank Affidavit's allegations that Movants owned, operated and maintained the machines, and plaintiff's brief's characterization of the machines as "the bingo-based slot machines of Defendant Cadillac Jack, Inc." (Plaintiff's Brief, at 6.) The Third Frank Affidavit is even internally inconsistent on this point. In one breath, Frank avers that Macke, Minard and Chayevsky "owned, operated, and maintained a network of electronically linked, bingo-based slot machines." (Third Frank Aff., ¶ 4.) In the next, he

-21-

The Court cannot agree with this logic.  That an individual may be a part owner of a piece of equipment (in this case, a slot machine) located in a judicial district does not render the situs of that equipment his regular and established place of business for venue purposes.  To declare otherwise would be to contort and expand the term "regular and established place of business" far beyond that which Congress could reasonably have intended in drafting the venue statute, and would contravene the precedents cautioning against liberal construction of § 1400(b).  As such, the Court finds that the Cadillac Jack slot machines located at a casino in Atmore, Alabama do not constitute a regular and established place of business for Macke, Minard and Chayevsky, as individuals.

### 3.   *HomeBingo's "Alter Ego" Argument for Laying Venue.*

In an effort to preserve venue as to these individual defendants, HomeBingo suggests that because venue properly lies in this forum as to Cadillac Jack under § 1391(c), and because Movants are its officers and directors, venue is proper as to them as well.  But this position is foreclosed by the following language from a Federal Circuit opinion:

> "[V]enue as to corporate employees charged with personal liability for acts taken as individuals, not as the alter ego of the corporation, does not flow automatically to forums in which venue is proper as to the corporation.
> "Venue requirements exist for the benefit of defendants .... When the cause of action is personal to the individual defendant, the venue requirement must be met as to that defendant. ..."

*Hoover Group, Inc. v. Custom Metalcraft, Inc.*, 84 F.3d 1408, 1410 (Fed. Cir. 1996) (citations omitted).  Here, a plain reading of the Complaint reflects that HomeBingo seeks to hold Macke, Minard and Chayevsky liable for their own personal acts of infringement, not simply for the corporate acts of Cadillac Jack.  Indeed, the Complaint includes three pages of allegations of infringement by the individual defendants, separate and apart from alleged acts of infringement by Cadillac Jack and other corporate defendants.  Because HomeBingo is proceeding against Movants with causes of action personal to them, rather than proceeding solely on theories of

---

describes them as "the bingo-based slot machines of Defendant Cadillac Jack, Inc." (*Id.*, ¶ 12.), implying that they are actually owned by Cadillac Jack.  Nonetheless, the Court will construe this evidence in the light most favorable to the non-movant, and will accept at face value Frank's averment that Movants owned, operated and maintained the machines, at least for purposes of the instant Motion to Dismiss.

derivative liability, the existence of venue as to Cadillac Jack does not automatically create venue for the individual defendants.

One caveat to the general proposition that venue must be satisfied independently as to individual defendants occurs where the individual is the corporate defendant's alter ego. Venue may properly be laid "with regard to individual stockholders (who are alter egos of the corporation) by virtue of the corporation's acts where venue would be proper as to a corporate parent or affiliate." *Minnesota Mining & Mfg. Co. v. Eco Chem, Inc.*, 757 F.2d 1256, 1265 (Fed. Cir. 1985); *see also Hoover*, 84 F.3d at 1410 (noting that venue for claims against corporate officer/owner for acts of infringement by the corporation "may reasonably be based on the venue provisions for the corporation"); *Dimensional Media*, 42 F. Supp.2d 312, 316 n.3 (S.D.N.Y. 1999) ("Under limited circumstances, it may be appropriate to pierce the corporate veil to establish venue in a patent action.").

HomeBingo does not contend that defendants Minard and Chayevsky are alter egos of Cadillac Jack, nor is there any evidence in the record from which it could be reasonably inferred that those defendants' link to Cadillac Jack is sufficiently strong to render them its alter ego. With regard to Macke, however, plaintiff's brief and the Third Frank Affidavit emphatically assert that Macke is Cadillac Jack's alter ego.[20] As such, the "alter ego" line of authorities must be examined to assess whether venue is properly established as to Macke.

In *Hoover*, the plaintiff sued both a company (Custom) and an individual (Holden) for patent infringement and, in the case of the individual, inducement to infringe the patents. The plaintiff alleged that Holden was the president, chief executive officer, and principal shareholder of Custom, and that he made all major decisions concerning Custom's business involved in this lawsuit. The district court found sufficient facts to support venue over Holden. On appeal, the Federal Circuit affirmed, reasoning that "the allegations of the complaint with respect to Mr.

---

[20]     Plaintiff's opposition brief characterizes Macke as the alter ego of Cadillac Jack in multiple places. (Plaintiff Brief, at 3, 6.) In this regard, it echoes allegations in the now-superseded Supplemental Affidavit of Alan Frank. Plaintiff's intent to invoke "alter ego" principles to establish venue over Macke is unmistakable. For that reason, the Court rejects as inaccurate Movants' suggestion that "HomeBingo has not alleged ... that Cadillac Jack, Inc. is the alter ego of the individual defendants." (Reply Brief, at 2.) It has certainly done so as to Macke.

-23-

Holden's ownership, control, and active management of the corporation provide sufficient basis for finding that venue was proper under §§ 1400(b) and 1391(c)." *Hoover*, 84 F.3d at 1411; *see also Kinetic Instruments*, 802 F. Supp. at 988 (plaintiff makes adequate *prima facie* showing to pierce corporate veil for venue purposes to prevent fraud and injustice where individual defendant was president of corporate defendant, owned more than 70% of its shares, controlled corporation, and boasted to plaintiff that he had taken steps to make sure that plaintiff would receive nothing if he sued corporation).

The allegations as to Macke in this case are indistinguishable from those deemed sufficient to establish venue over Holden in *Hoover*. Macke is alleged to be the President and Chief Executive Officer of Cadillac Jack. (Complaint, ¶ 5.) Plaintiff has offered testimony that Macke "owned or controlled" Cadillac Jack, and that he "made all of its major decisions" during the time period at issue. (Third Frank Affidavit, ¶ 9.) There is evidence that Macke and Cadillac Jack may have commingled funds or shared financial obligations, given that on one occasion Macke purportedly informed Frank that if Cadillac Jack "did not pay the money it then owed to plaintiff, he, Mr. Macke, would pay it out of his own pocket." (*Id.*, ¶ 10.) These types of allegations were held by the Federal Circuit in *Hoover* to confer "alter ego" status on the individual defendant for purposes of the venue provisions of § 1400(b). The Court finds them equally satisfactory to render Macke the alter ego of Cadillac Jack for venue purposes.[21] Because venue is clearly proper as to Cadillac Jack in this judicial district, venue is also proper as to Macke. Therefore, the Motion to Dismiss for improper venue is **denied** as to defendant Macke on "alter ego" grounds. There being no evidence and no basis for concluding that "alter ego" theories might preserve venue as to Minard and Chayevsky, and the venue provisions of § 1400(b) being clearly unsatisfied as to those two defendants, the Motion to Dismiss for improper venue is **granted** as to defendants Minard and Chayevsky.

## IV.   Conclusion.

For all of the foregoing reasons, the Motion to Dismiss Pursuant to Fed.R.Civ.P. 12(b)(3)

---

[21]     To be clear, the Court makes no findings as to whether Macke is Cadillac Jack's alter ego for liability purposes, or whether piercing the corporate veil will be appropriate at the merits stage. Those issues are not now before the Court, and will not be decided at this time.

and 12(b)(2) (doc. 21) is **granted in part, and denied in part**.  With respect to the request to dismiss the Complaint for want of personal jurisdiction pursuant to Rule 12(b)(2), the Motion is **denied**.  The request to dismiss the Complaint for improper venue pursuant to Rule 12(b)(3) is **denied** as to defendant Macke, but **granted** as to defendants Minard and Chayevsky.  There having been no request by any party to transfer them to an alternative forum where venue would be proper, the claims against Minard and Chayevsky are **dismissed without prejudice**.[22]

DONE and ORDERED this 21st day of April, 2006.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE

---

[22]   Also, the following allegations of the Third Affidavit of Alan Frank (doc. 54) are **stricken** as stating legal conclusions: (a) the portion of Paragraph 9 characterizing Macke as Cadillac Jack's alter ego; (b) the portion of Paragraph 11 accusing defendants of infringing the '892 Patent; and (c) the portion of Paragraph 18 stating that Movants had a regular and established place of business at the Atmore casino.